# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HUSSEIN SALEM MOHAMMAD ABDALLAH )
    EL-MARQODI, )
        Detainee, )
        Guantánamo Bay Naval Station )
        Guantánamo Bay, Cuba; )
     )
     )
*Petitioner/Plaintiff,* )
     )
     )    **PETITION FOR WRIT**
v. )    **OF HABEAS CORPUS**
     )
     )    **No. _____**
GEORGE W. BUSH, )
        President of the United States )
        The White House )
        1600 Pennsylvania Ave., N.W. )
        Washington, D.C. 20500; )
     )
DONALD RUMSFELD, )
        Secretary, United States )
        Department of Defense )
        1000 Defense Pentagon )
        Washington, D.C. 20301-1000; )
     )
ARMY BRIG. GEN. JAY HOOD, )
        Commander, Joint Task Force - GTMO )
        JTF-GTMO )
        APO AE 09360; and )
     )
ARMY COL. MIKE BUMGARNER, )
        Commander, Joint Detention )
          Operations Group, JTF - GTMO )
        JTF-GTMO )
        APO AE 09360, )
     )
*Respondents/Defendants.* )

## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Hussein Salem Mohammad Abdallah El-Marqodi ("El-Marqodi") seeks the Great Writ. A citizen of Yemen, he acts on his own behalf. See Authorization to Represent Hussein Salem Mohammad Abdallah El-Marqodi, attached hereto as Exhibit A. He is a civilian wrongly classified as an "enemy combatant" by the President of the United States, and is being held virtually *incommunicado* in military custody at the United States Naval Station in Guantánamo Bay, Cuba ("Guantánamo"). His detention is without lawful basis, without charge, and without access to counsel or any fair process by which he might challenge his detention. Petitioner is being held under color and authority of the Executive, and in violation of the Constitution, laws and treaties of the United States as well as in violation of customary international law. Accordingly, this Court should issue a Writ of Habeas Corpus compelling Respondents either to release Petitioner El-Marqodi or to establish in this Court a lawful basis for Petitioner El-Marqodi's detention. This Court should also order injunctive and declaratory relief.

## I.
## JURISDICTION

1.  Petitioner brings this action under 28 U.S.C. §§ 2241(a), (c)(1) and (c)(3) and 2242. Petitioner further invokes this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202; 5 U.S.C. § 702; Articles I and II of, and the Fifth, Sixth, and Eighth Amendments to, the United States Constitution. Because he seeks declaratory relief, Petitioner also relies on Fed. R. Civ. P. 57.

2.  This Court is further empowered to declare the rights and other legal relations of the parties herein by 28 U.S.C. § 2201, and to effectuate and enforce declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this case involves an actual

controversy within the Court's jurisdiction, and to issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

## II.
## PARTIES

3.      Petitioner, a citizen of Yemen, is presently incarcerated and held in Respondents' unlawful custody and control at Guantánamo.

4.      Respondent George W. Bush is the President of the United States and Commander-in-Chief of the United States Military.  Petitioner El-Marqodi is being detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war or, alternatively, pursuant to the Executive Order of November 13, 2001, Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 (November 13, 2001) ("Executive Order").  President Bush is responsible for Petitioner El-Marqodi's unlawful detention and is sued in his official capacity.

5.      Respondent Donald Rumsfeld is the Secretary of the United States Department of Defense.  Pursuant to the President's authority as Commander-in-Chief, his authority under the laws and usages of war or, alternatively, pursuant to the Executive Order, Respondent Rumsfeld has been charged with maintaining the custody and control of Petitioner El-Marqodi.  He is sued in his official capacity.

6.      Respondent Brigadier Gen. Jay Hood is the Commander of Joint Task Force-GTMO, the task force running the detention operation at Guantánamo Bay.  He has supervisory responsibility for Petitioner El-Marqodi and is sued in his official capacity.

7.      Respondent Army Colonel Mike Bumgarner is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the U.S. facility where Petitioner El-Marqodi is presently held.  He is the immediate custodian responsible for Petitioner El-Marqodi's detention and is sued in his official capacity.

8.    Respondents are directly responsible for any activities undertaken by or under the supervision of any agents or employees acting on their behalf, or of agents or employees of private contractors ("contractor employees") with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantánamo.  All references to Respondents' actions in this Petition include activities performed by Respondents' agents or employees, other government agents or employees or contractor employees.

### III.
### STATEMENT OF FACTS

9.    Upon information and belief, Petitioner El-Marqodi is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind under any definition adopted by the government in any civil or military proceeding.

10.    Upon information and belief, Petitioner El-Marqodi seeks to enforce his right to a judicial determination of the lawfulness of his detention.

11.    Upon information and belief, Petitioner El-Marqodi is not, nor has he ever been an "enemy combatant" who was "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who engaged in an armed conflict against the United States there." *Hamdi v. Rumsfeld*, 124 S.Ct. 2633, 2639 (2004).

12.    Upon information and belief, Petitioner El-Marqodi seeks to enforce his right to a judicial determination by an appropriate and lawful authority as to whether there is a lawful and factual basis for Respondents' determination that he is either an "enemy combatant" as defined by the United States Supreme Court in *Hamdi* or an "enemy combatant" as that term is defined and used by the Executive in the Combatant Status Review Tribunals.

13.    Upon information and belief, at the time of his seizure and detention, Petitioner El-Marqodi was not a member of the Taliban Government's armed forces or Al Qaeda.

Prior to his detention, he did not commit any violent act against any American person or property. He had no involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, the ensuing armed conflict, or any act of international terrorism attributed by the United States to Al Qaeda. He remains incarcerated at the U.S. Naval base at Guantánamo, Cuba, a territory over which the United States exercises exclusive jurisdiction and control.

14.    Upon information and belief, Petitioner has not been afforded any procedures that would satisfy his rights under the most fundamental common law notions of due process, the U.S. Constitution, the laws and treaties of the United States, or customary international law.

15.    Upon information and belief, Petitioner El-Marqodi desires to pursue in United States courts every available legal challenge to the lawfulness of his detention.

**The Joint Resolution**

16.    In the wake of the September 11, 2001 attacks on the United States, the United States, at the direction of President Bush, began a massive military campaign against the Taliban government, then in power in Afghanistan. On September 18, 2001, a Joint Resolution of Congress authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons." Joint Resolution 23, Authorization for Use of Military Force, Public Law 107-40, 115 Stat. 224 (Jan. 18, 2001) ("Joint Resolution").

17.    As Petitioner El-Marqodi did not participate in the armed conflict at any point in time, he is not properly detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war, or the Joint Resolution.

### The Executive Order

18.    On November 13, 2001, Respondent Bush issued an Executive Order authorizing

Respondent Rumsfeld to detain indefinitely anyone Respondent Bush has "reason to

believe":

i.    is or was a member of the organization known as al Qaeda;
ii.   has engaged in, aided or abetted, or conspired to commit, acts of international
      terrorism, or acts in preparation therefor, that have caused, threaten to cause, or
      have as their aim to cause, injury to or adverse effects on the United States, its
      citizens, national security, foreign policy, or economy; or
iii.  has knowingly harbored one or more individuals described in subparagraphs (i)
      and (ii).

*See* Executive Order, 66 Fed. Reg. 57,833, §2 (November 13, 2001).  President Bush

must make this determination in writing.  The Executive Order was neither authorized

nor directed by Congress, and is beyond the scope of the Joint Resolution of September

18, 2001.

19.    The Executive Order purports to vest President Bush with the sole discretion to identify

individuals who fall within its purview.  It establishes no standards governing the

exercise of his discretion.  Once a person has been detained, the Executive Order contains

no provision for that person to be notified of the charges he may face.  The Executive

Order authorizes detainees to be confined indefinitely without charges.  It contains no

provision for a detainee to be notified of his rights under domestic and international law,

and provides neither the right to counsel, nor rights to notice of consular protection or to

consular access at the detainee's request.  It provides no right to appear before a neutral

tribunal to review the basis for or the legality of a detainee's continued detention and

contains no provision for recourse to an Article III court.  In fact, the Executive Order

expressly bars review by any court.  The Executive Order authorizes indefinite and

unreviewable detention, based on nothing more than President Bush's written determination that an individual is subject to its terms.

20. The Executive Order was promulgated in the United States and in this judicial district, the decision to incarcerate Petitioner was made by Respondents in the United States and in this judicial district, the decision to detain Petitioner at Guantánamo was made in the United States and in this judicial district, and the decision to continue detaining Petitioner was, and is, being made by Respondents in the United States and in this judicial district.

21. Upon information and belief, President Bush has never certified or determined in any manner, in writing or otherwise, that Petitioner is subject to the Executive Order.

22. Petitioner is not properly subject to the Executive Order.

23. Petitioner has not been, and is not being, detained lawfully either pursuant to the Executive Order, President Bush's authority as Commander-in-Chief and/or the laws and usages of war in that Petitioner has been denied the process due to him under the common law and the Due Process Clause of the Fifth Amendment to the Constitution of the United States, domestic civil and military law, and international law.

### Guantánamo Bay Naval Station

24. On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to Camp X-Ray at the United States Naval Base in Guantánamo Bay, Cuba. In April 2002, prisoners were transferred to Camp Delta, a more permanent prison facility at Guantánamo. Currently, some prisoners are housed in Camp Delta and Camp Five, an additional maximum-security interrogation and detention center.

25. Prisoners incarcerated at Guantánamo are entitled to test the legality of their detention in the federal courts. *See Rasul v. Bush*, 124 S.Ct. 2686, 2698 (2004).

26.    On a date unknown to counsel, but known to Respondents, the United States military

transferred Petitioner El-Marqodi to Guantánamo, where he has been held ever since, in

the custody and control of Respondents.

### The Conditions of Detention at Guantánamo

27.    Since gaining control of Petitioner El-Marqodi, the United States military has held him

virtually *incommunicado.*

28.    On information and belief, Petitioner El-Marqodi has been or will be interrogated

repeatedly by agents of the United States Departments of Defense and Justice, and the

Central Intelligence Agency, though he has not been charged with an offense and has not

been notified of any pending or contemplated charges.  He has not appeared before a

lawful military or civilian tribunal, and has not been provided access to counsel or the

means to contact and secure counsel.  He has not been adequately informed of his rights

under the United States Constitution, the regulations of the United States Military, the

Geneva Convention, the International Covenant on Civil and Political Rights, the

American Declaration on the Rights and Duties of Man, the 1954 Convention Relating to

the Status of Refugees or customary international law.  Indeed, Respondents have taken

the position that Petitioner El-Marqodi should not be informed of these rights.  As a

result, Petitioner El-Marqodi lacks any ability to protect or to vindicate his rights under

domestic and international law.

29.    Upon information and belief, Petitioner El-Marqodi has been forced to provide

involuntary statements to Respondents' agents at Guantánamo.

30.    Upon information and belief, Petitioner El-Marqodi has been held under conditions that

violate his constitutional and international rights to dignity and freedom from torture and

from cruel, inhuman and degrading treatment or punishment.  *See, e.g.,* United Nations

Press Release, "United Nations Human Rights Experts Express Continued Concern About Situation of Guantánamo Bay Detainees," Feb. 4, 2005; International Committee of the Red Cross, Press Release, "The ICRC's Work at Guantánamo Bay," Nov. 30, 2004; International Committee of the Red Cross, Operational Update, "US Detention Related to the Events of September 11, 2001 and Its Aftermath - the Role of the ICRC," July 26, 2004; Amnesty International, *United States of America: Human Dignity Denied: Torture and Accountability in the 'War on Terror'*, at 22 (Oct. 27, 2004) (available at http://web.amnesty.org/library/Index/ENGAMR 511452004); *see also* Barry C. Scheck, *Abuse of Detainees at Guantanamo Bay*, The Nat'l Assoc. of Criminal Defense Lawyers Champion, Nov. 2004, at 4-5. Indeed, many of these violations – including isolation for up to 30 days, 28-hour interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults, removal of clothing, hooding, and the use of dogs to create anxiety and terror – were actually interrogation techniques approved for use at Guantánamo by the most senior Department of Defense lawyer. *See* Action Memo from William J. Haynes II, General Counsel, DOD, to Secretary of Defense (Nov. 27, 2002); *Pentagon Working Group Report on Detainee Interrogations in the Global War on Terrorism: Assessment of Legal, Historical, Policy and Operational Considerations*, at 62-65 (Apr. 4, 2003).[1]

31. In a confidential report to the United States government, the ICRC charged the U.S. military with intentional use during interrogations of psychological and physical coercion

---

[1] Additional details of the cruel and degrading conditions suffered by detainees at Guantánamo are set out at length in a statement by numerous released British detainees. *See* Shafiq Rasul, Asif Iqbal & Rhuhel Ahmed, *Composite Statement: Detention in Afghanistan and Guantanamo Bay*, 300, *at* http://www.ccr-ny.org/v2/reports/docs/Gitmo-compositestatementFINAL23 july04.pdf). The Department of Defense also informed the Associated Press that a number of interrogators at Guantánamo have been demoted or reprimanded after investigations into accusations of abuse at the facility. *See Report Details Guantanamo Abuses*, Assoc. Press, Nov. 4, 2004.

on prisoners at Guantánamo that is "tantamount to torture." *See* Neil A. Lewis, "Red Cross Finds Detainee Abuse in Guantánamo," *New York Times*, Nov. 30, 2004, at A1. The report includes claims that doctors and other medical workers at Guantánamo participated in planning for interrogations. *Id.*; *see also* M. Gregg Bloche and Jonathan H. Marks, "When Doctors Go to War," *New England Journal of Medicine*, Jan. 6, 2005, at 3-4. Since details of the ICRC's report emerged, new revelations of abuse and torture at Guantánamo have appeared, including FBI memos detailing torture and "highly aggressive interrogation techniques" including 24-plus hour interrogations involving temperature extremes, dogs, prolonged isolation, and loud music. *See Guantánamo: An Icon of Lawlessness,* Amnesty International, Jan. 6, 2005, at 3-5; *see also* Neil A. Lewis, "Fresh Details Emerge on Harsh Methods at Guantánamo," *New York Times*, Jan. 1, 2005, at A11; Carol D. Leonnig, "Further Detainee Abuse Alleged; Guantánamo Prison Cited in FBI Memos," *Washington Post*, Dec. 26, 2004, at A1; Neil A. Lewis and David Johnston, "New F.B.I. Memos Describe Abuses of Iraq Inmates," *New York Times*, Dec. 21, 2004, at A1; Dan Eggen and R. Jeffrey Smith, "FBI Agents Allege Abuse of Detainees at Guantánamo Bay," *Washington Post*, Dec. 21, 2004, at A1; Neil A. Lewis, "F.B.I. Memos Criticized Practices at Guantánamo," *New York Times*, Dec. 7, 2004, at A19. Even more recently, the Associated Press has reported allegations that female Guantánamo interrogators have used sexual taunting, including smearing fake menstrual blood on a detainee's face, to try to break Muslim detainees. Associated Press, *Gitmo Soldier Details Sexual Tactics*, Jan. 27, 2005.

32.  The unlawful and unconstitutional interrogation techniques used by Respondents at Guantánamo include not only physical and psychological abuse but also other impermissible conduct contrary to due process requirements, including, upon information

and belief, having agents of the Government present themselves as lawyers for the detainees during meetings with the detainees, for the purpose of extracting information from the detainees. *See* Sam Hannel, "Lawyers Describe Guantánamo Detainees," *Seattle Post-Intelligencer*, Jan. 19, 2005.

33.    Respondents, acting individually or through their agents, have stated that whatever limitations apply on coercive interrogation techniques used by U.S. military officials under the auspices of the Department of Defense *do not apply* to interrogations conducted by agents of the CIA or other entities under President Bush. Eric Lichtblau, "Gonzales Says '02 Policy on Detainees Doesn't Bind CIA," *New York Times*, Jan. 19, 2005, at A17; Dan Eggen and Charles Babington, "Torture by U.S. Personnel Illegal, Gonzales Tells Senate," *Washington Post*, Jan. 18, 2005, at A4.

34.    In published statements, President Bush and Secretary Rumsfeld, and predecessors of Hood and Gyurisko, respectively, Lehnert and Carrico, have proclaimed that the United States may hold the detainees under their current conditions indefinitely. See, e.g., Roland Watson, *The Times* (London), Jan. 18, 2002 ("Donald Rumsfeld, the U.S. Defense Secretary, suggested last night that Al-Qaeda prisoners could be held indefinitely at the base. He said that the detention of some would be open-ended as the United States tried to build a case against them."); Lynne Sladky, Assoc. Press, Jan. 22, 2002 ("Marine Brig. Gen. Mike Lehnert, who is in charge of the detention mission, defended the temporary cells where detainees are being held . . . . 'We have to look at Camp X-ray as a work in progress . . .' Lehnert told CNN. Lehnert said plans are to build a more permanent prison 'exactly in accordance with federal prison standards . . . .'"); John Mintz, "Extended Detention in Cuba Mulled," *The Washington Post*, February 13, 2002. ("As the Bush Administration nears completion of new rules for conducting military

trials of foreign detainees, U.S. officials say they envision the naval base at Guantánamo

Bay, Cuba, as a site for the tribunals and as a terrorist penal colony for many years to

come.").

35.    According to the Department of Defense, detainees who are adjudged innocent of all

charges by a military commission may nevertheless be kept in detention at Guantánamo

indefinitely.  *See* Department of Defense Press Background Briefing of July 3, 2003, at

http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last visited

February 14, 2005).

36.    Counsel for Respondents have also consistently maintained that the United States may

hold the detained Petitioners under their current conditions indefinitely.  *In re*

*Guantánamo Detainee Cases*, Nos. 02-CV-0299 (CKK), *et al.*, (D.D.C.), Tr. of Dec. 1,

2004 Oral Argument on Motion to Dismiss at 22-24, statements of Principle Deputy

Associate Att'y Gen. Brian Boyle; *see also* Dana Priest, "Long-Term Plan Sought for

Terror Suspects," *Wash. Post*, Jan. 2, 2005, at A1.  Moreover, the Government has

recently acknowledged plans to begin constructing a new, more permanent facility at

Guantánamo.  Christopher Cooper, "In Guantánamo, Prisoners Languish in a Sea of Red

Tape," *Wall Street Journal*, Jan. 26, 2005, at A1; Associated Press, "Guantánamo Takes

on the Look of Permanency," Jan. 9, 2005.

### Rendition

37.    During interrogations, detainees have also been threatened with rendition or transfer to

countries that permit indefinite detention without charge or trial and/or routinely practice

torture.  Upon information and belief, the United States has secretly transferred detainees

to such countries without complying with the applicable legal requirements for

extradition.  This practice, known as "extraordinary rendition," is used to facilitate

interrogation by subjecting detainees to torture.  *See* Jane Mayer, "Outsourcing Torture: The Secret History of American's "Extraordinary Rendition" Program, *The New Yorker*, Feb. 14, 2005, at 106.

38.     The U.S. government's practice of extraordinary rendition has been well documented by major American and international news organizations, including, *inter alia*, the *Washington Post*, *The Los Angeles Times*, and the British Broadcasting Corporation (the "BBC").  According to news accounts:

> Since September 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence source.  The suspects have been taken to countries . . . whose intelligence services have close ties to the CIA and where they can be subjected to interrogation tactics -- including torture and threats to families -- that are illegal in the United States, the sources said. In some cases, U.S. intelligence agents remain closely involved in the interrogations, the sources said.

Rajiv Chanrasekaran & Peter Finn, "U.S. Behind Secret Transfer of Terror Suspects," *Wash. Post*, Mar. 11, 2002, at A1; *see also* Dana Priest, "Long Term Plan Sought for Terror Suspects," *Wash. Post*, Jan. 2, 2005, at A1 ("The transfers, called 'renditions,' depend on arrangements between the United States and other countries, such as Egypt . . . , that agree to have local security services hold certain suspects in their facilities for interrogation by CIA and foreign liaison officers.").

39.     Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture during interrogations and incarceration.

## IV.
## CAUSES OF ACTION

FIRST CLAIM FOR RELIEF
(Common Law Due Process and Due Process Clause of the
Fifth Amendment to the Constitution of the United States -
Unlawful Deprivation of Liberty)

40.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

41.    By the actions described above, Respondents, acting under color of law, have violated
and continue to violate common law principles of due process as well as the Due Process
Clause of the Fifth Amendment to the Constitution of the United States.  President Bush
has ordered the prolonged, indefinite, and arbitrary detention of individuals including
Petitioner El-Marqodi, without due process of law, and the remaining Respondents have
implemented those orders.  Respondents' actions deny Petitioner El-Marqodi the process
accorded to persons seized and detained by the United States military in times of armed
conflict as established by, *inter alia*, the Uniform Code of Military Justice,  Army
Regulation 190-8, Articles 3 and 5 of the Third and Fourth Geneva Conventions, and
customary international law as reflected, expressed, and defined in multilateral treaties
and other international instruments, international and domestic judicial decisions, and
other authorities.

42.    To the extent that Petitioner El-Marqodi's detention purports to be authorized by the
Executive Order, that Order violates the Fifth Amendment on its face and as applied to
Petitioner.

43.    Accordingly, Petitioner El-Marqodi is entitled to habeas, declaratory, and injunctive
relief as well as any other relief the court may deem appropriate.

## SECOND CLAIM FOR RELIEF
### (Due Process Clause of the Fifth Amendment to the Constitution of the United States – Unlawful Conditions of Confinement)

44.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

45.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of Petitioner to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

46.    Accordingly, Petitioner is entitled to declaratory and injunctive relief as well as any other relief the court may deem appropriate.

## THIRD CLAIM FOR RELIEF
### (Geneva Convention – Arbitrary Denial of Due Process)

47.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

48.    By the actions described above, Respondents, acting under color of law, have denied and continue to deny Petitioner El-Marqodi the process accorded to persons seized and detained by the United States military in times of armed conflict as established by specific provisions of the Third and Fourth Geneva Conventions.

49.    Violations of the Geneva Conventions are direct treaty violations and are also violations of customary international law, and constitute an enforceable claim under 28 U.S.C. § 2241 (c)(3).

50.    Respondents are liable for this conduct described above, insofar as they set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

51.    Accordingly, Petitioner El-Marqodi is entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## FOURTH CLAIM FOR RELIEF
### (International Humanitarian and Human Rights Law -
### Arbitrary Denial of Due Process)

52.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

53.    By the actions described above, Respondents have denied and continue to deny Petitioner
       El-Marqodi the process due to persons seized and detained by the United States military
       in times of armed conflict as establish by customary international humanitarian  and
       human rights law as reflected, expressed, and defined in multilateral treaties and other
       international instruments and domestic judicial decisions, and other authorities.

54.    Because Respondents are detaining Petitioner El-Marqodi "under or by color of the
       authority of the United States" and "in violation of the Constitution or laws or treaties of
       the United States," Petitioner's claim arises under 28 U.S.C.§ 2241, and he is entitled to
       habeas relief.

55.    Petitioner El-Marqodi is entitled to habeas, declaratory, and injunctive relief as well as
       any other relief the court may deem appropriate.

## FIFTH CLAIM FOR RELIEF
### (Alien Tort Statute - Torture)

56.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

57.     By the actions described above, the Respondents directed, ordered, confirmed, ratified,
       and/or conspired together and with others to bring about acts that deliberately and
       intentionally inflicted severe physical and psychological abuse and agony upon Petitioner
       El-Marqodi in order to obtain coerced information or confessions from him, punish or
       intimidate Petitioner El-Marqodi or for other purposes.  Among other abuses, Petitioner
       El-Marqodi has been held in and surrounded by conditions of isolation; constant
       vulnerability to repeated interrogation and severe beatings; the threat or reality of being
       kept in cages with no privacy; shackled with heavy chains and irons; placed in solitary

confinement or the threat of solitary confinement for minor rule infractions for prolonged periods of time; interrogated while shackled and chained in painful positions; exposed to extremes of temperature; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture; sexually humiliated; denied access to counsel and family; deprived of adequate medical care; and subjected to repeated psychological abuse.

58. The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

59. Respondents are liable for said conduct because they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit the acts of torture against Petitioner El-Marqodi.

60. Petitioner El-Marqodi was forced to suffer severe physical and psychological abuse and agony and is entitled to habeas, declaratory, and injunctive relief and other relief to be determined at trial.

### SIXTH CLAIM FOR RELIEF
### (Alien Tort Statute – War Crimes)

61. Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

62. By the actions described above, Respondents' acts directing, ordering, confirming, ratifying, and/or conspiring to bring about the torture and other inhumane treatment of Petitioner El-Marqodi constitute war crimes and/or crimes against humanity in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated, among others, the Fourth Geneva Convention, Common Article III of the

Geneva Conventions and Additional Protocols I and II of the Geneva Conventions as well as customary international law prohibiting war crimes as reflected, expressed, and defined in other multilateral treaties and international instruments, international and domestic judicial decision, and other authorities.

63.    As a result of Respondents' unlawful conduct, Petitioner El-Marqodi has been and is forced to suffer severe physical and psychological abuse and agony, and is therefore entitled to declaratory, and injunctive relief, and such other relief as the court may deem appropriate.

SEVENTH CLAIM FOR RELIEF
(Alien Tort Statute – Cruel, Inhuman or
Degrading Treatment)

64.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

65.    The acts described herein had the intent and the effect of grossly humiliating and debasing Petitioner El-Marqodi, forcing him to act against his will and conscience, inciting fear and anguish, and breaking his physical or moral resistance.

66.    The acts described herein constitute cruel, inhuman or degrading treatment in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting cruel, inhuman or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

67.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to cause the cruel, inhuman or degrading treatment of Petitioner El-Marqodi.

68.  Petitioner El-Marqodi was forced to suffer severe physical and psychological abuse and agony and is entitled to declaratory and injunctive relief as well as other relief to be determined at trial.

EIGHTH CLAIM FOR RELIEF
(Alien Tort Statute - Arbitrary Arrest and
Prolonged Arbitrary Detention)

69.  Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

70.  The acts described herein constitute arbitrary arrest and detention of Petitioner El-Marqodi in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

71.  Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about the arbitrary arrest and prolonged arbitrary detention of Petitioner El-Marqodi in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

72.  As a result of Respondents' unlawful conduct, Petitioner El-Marqodi has been and is deprived of his freedom, separated from his family, and forced to suffer severe physical and mental abuse, and is therefore entitled to habeas, declaratory, and injunctive relief, and such other relief as the court may deem appropriate.

## NINTH CLAIM FOR RELIEF
### (Alien Tort Statute – Enforced Disappearance)

73.  Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

74.  By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about the enforced disappearance of Petitioner El-Marqodi in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting enforced disappearances as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

75.  As a result of Respondents' unlawful conduct, Petitioner El-Marqodi has been and is deprived of his freedom, separated from his family, and forced to suffer severe physical and mental abuse, and is therefore entitled to habeas, declaratory and injunctive relief and such other relief as the court may deem appropriate.

## TENTH CLAIM FOR RELIEF
### (Article II of The United States Constitution - Unlawful Detention)

76.  Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

77.  Petitioner El-Marqodi is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind.  The Executive lacks the authority to order or direct military officials to detain civilians who are seized far from the theater of war or occupied territory or who were not "carrying a weapon against American troops on a foreign battlefield." *Hamdi v. Rumsfeld*, 124 S.Ct. 2633, 2642 n.1 (2004).

78.  By the actions described above, President Bush has exceeded and continues to exceed the Executive's authority under Article II of the United States Constitution by authorizing, ordering and directing that military officials seize Petitioner El-Marqodi and transfer him to military detention, and by authorizing and ordering their continued military detention

at Guantánamo. All of the Respondents acted and continue to act without lawful authority by directing, ordering, and/or supervising the seizure and military detention of Petitioner El-Marqodi.

79.    The military seizure and detention of Petitioner El-Marqodi by the Respondents is *ultra vires* and illegal because it is in violation of Article II of the United States Constitution. To the extent that the Executive asserts that Petitioner's detention is authorized by the Executive Order, that Order exceeds the Executive's authority under Article II and is *ultra vires* and void on its face and as applied to Petitioner.

80.    To the extent that Respondents assert that their authority to detain Petitioner El-Marqodi derives from a source other than the Executive Order, including without limitation the Executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the U.S. Armed Forces, whether from Article II of the Constitution or otherwise, Respondents lack that authority as a matter of fact and law.

81.    Accordingly, Petitioner El-Marqodi is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

ELEVENTH CLAIM FOR RELIEF
(Violation of the APA – Arbitrary and Capricious
Unlawful Detention)

82.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

83.    Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat against the United States. *See, e.g.*, Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

84.    By arbitrarily and capriciously detaining Petitioner El-Marqodi in military custody for

over three years in the manner described above, Respondents have acted and continue to

act *ultra vires* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C.

§ 706(2).

85.    Accordingly, Petitioner El-Marqodi is entitled to habeas, declaratory, and injunctive

relief, as well as any other relief the court may deem appropriate.

TWELFTH CLAIM FOR RELIEF
(Violation of the APA – Arbitrary and Capricious
Denial of Due Process)

86.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

87.    By the actions described above, Respondents, acting under color of law, have arbitrarily

and capriciously denied and continue to deny Petitioner El-Marqodi the process accorded

to persons seized and detained by the United States military in times of armed conflict as

established by Army Regulation 190-8 in violation of the Administrative Procedures Act,

5 U.S.C. § 706(2).

88.    Accordingly, Petitioner El-Marqodi is entitled to habeas, declaratory, and injunctive

relief, as well as any other relief the court may deem appropriate.

THIRTEENTH CLAIM FOR RELIEF
(Violation of the APA – Torture and Cruel, Inhuman
or Degrading Treatment)

89.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

90.    By the actions described above, the Respondents have acted and continue to act

arbitrarily and capriciously by directing, ordering, confirming, ratifying, and/or

conspiring to unlawfully subject Petitioner El-Marqodi to torture and/or cruel, inhuman

or degrading treatment in violation of Army Regulation 190-8 and the Administrative

Procedures Act, 5 U.S.C. § 706(2).

91.   Accordingly, Petitioner El-Marqodi is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

FOURTEENTH CLAIM FOR RELIEF
(Violation of the Right to Counsel and to
Access to the Courts)

92.   Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

93.   Respondents, purportedly acting from a concern for national security, consistently have contrived to intrude upon Petitioner El-Marqodi's right to consult with counsel by conditioning counsel's access to Petitioner on unreasonable terms, including classification/declassification procedures, all in violation of Petitioner El-Marqodi's attorney-client privilege, his work product privilege, and the Fifth and Sixth Amendments to the U.S. Constitution.

94.   Accordingly, Petitioner El-Marqodi is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

FIFTEENTH CLAIM FOR RELIEF
(Due Process Clause - Rendition)

95.   Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

96.   Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner's rights under the Due Process Clause of the Fifth Amendment to the United States Constitution.

97.   Accordingly, Petitioner El-Marqodi is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

## SIXTEENTH CLAIM FOR RELIEF
(Convention Against Torture and Convention Relating to
the Status of Refugees - Rendition)

98. Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

99. Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a direct violation of Petitioner's rights under the Covenant Against Torture and the 1954 Convention Relating to the Status of Refugees, 19 U.S.T. 6259, 189 U.N.T.S. 150 *entered into force* Apr. 22, 1954.

100. Accordingly, Petitioner El-Marqodi is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

## SEVENTEENTH CLAIM FOR RELIEF
(Alien Tort Statute - Rendition)

101. Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

102. Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner's rights under customary international law, which may be vindicated under the Alien Tort Statute.

103. Accordingly, Petitioner El-Marqodi is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

## V.
## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays for relief as follows:

1.    Grant the Writ of Habeas Corpus and order Respondents to release Petitioner El-Marqodi from his current unlawful detention;

2.    Order that Petitioner El-Marqodi be brought before the Court or before a Magistrate Judge assigned by the Court at a convenient facility to conduct proceedings under the supervision of the Court to vindicate his rights;

3.    Order that Respondents be enjoined during the pendency of this petition for writ of habeas corpus from transferring or rendering Petitioner El-Marqodi from the United States custody at Guantánamo Bay Naval Base to any other location or any other custodian where he may be subject to continued deprivation of his rights, detention, physical and mental abuse, acts of torture, and cruel, inhuman and degrading treatment.

4.    Order Respondents to allow counsel to meet and confer with Petitioner El-Marqodi, in private and unmonitored attorney-client conversations;

5.    Order Respondents to cease all interrogations of Petitioner El-Marqodi, direct or indirect, while this litigation is pending;

6.    Order Respondents to cease all acts of torture and cruel, inhuman and degrading treatment of Petitioner El-Marqodi;

7.    Order and declare the Executive Order of November 13, 2001 is *ultra vires* and unlawful in violation of Article II of the United States Constitution, the Fifth Amendment to the U.S. Constitution, the Uniform Code of Military Justice, the Administrative Procedures Act, 5 U.S.C. § 702, the treaties of the United States and customary international law;

8.    Order and declare that the prolonged, indefinite, and restrictive detention of Petitioner El-

Marqodi without due process is arbitrary and unlawful and a deprivation of liberty

without due process in violation of common law principles of due process, the Due

Process Clause of the Fifth Amendment to the United States Constitution, the regulations

of the United States military, the treaties of the United States, and customary

international humanitarian law; and

9.    Grant such other relief as the Court may deem necessary and appropriate to protect

Petitioner's rights under the common law, the United States Constitution, federal

statutory law and international law.


Dated:  August 16, 2005                    Respectfully submitted,


                                           _Richard L. Cys_____
                                           Richard L. Cys (DC Bar No. 087536)
                                           Davis Wright Tremaine LLP
                                           1500 K Street, NW, Ste. 450
                                           Washington, DC  20005-1272
                                           (202) 508-6617

                                           James P. Walsh (DC Bar No. 930115)
                                           Davis Wright Tremaine LLP
                                           One Embarcadero Center, Ste. 600
                                           San Francisco, CA  94111-3611
                                           (415) 276-6556

                                           Counsel for Petitioner


                                           *Of Counsel*
                                           Michael Ratner
                                           Center for Constitutional Rights
                                           666 Broadway, 7th Floor
                                           New York, New York  10012
                                           (212) 614-6464

## **CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION**

Counsel for Petitioner certify, pursuant to L. Cv. R. 83.2(g), that they are representing Petitioner without compensation.

Dated:  August 16, 2005

*Richard L. Cys*

Richard L. Cys (DC Bar No. 087536)
Davis Wright Tremaine LLP
1500 K Street, NW, Ste. 450
Washington, DC  20005-1272
(202) 508-6617

James P. Walsh (DC Bar No. 930115)
Davis Wright Tremaine LLP
One Embarcadero Center, Ste. 600
San Francisco, CA  94111-3611
(415) 276-6556

Counsel for Petitioner

*Of Counsel*
Michael Ratner
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, New York  10012
(212) 614-6464

## CERTIFICATE OF SERVICE

I, Richard L. Cys, hereby certify at on this 16th day of August, 2005, I caused copies of the Petition for Writ of Habeas Corpus, and the certification pursuant to L.Civ.R. 83.2(g), to be served on each of the Respondents or their counsel as follows:

*By hand-delivery to:*
Kenneth L. Wainstein
U.S. Attorney
District of Columbia District
Judiciary Center
555 4th Street, N.W.
Washington, D.C. 20530

Alberto R. Gonzales
Attorney General of the United States
U.S. Department of Justice
Robert F. Kennedy Building
Tenth Street & Constitution Avenue, N.W.
Room 5111
Washington, D.C. 20530

*By Certified Mail, Return Receipt Requested to:*

George W. Bush
President of the United States of America
The White House
1600 Pennsylvania Avenue, N.W.
Washington, D.C. 20500

Donald Rumsfeld
Secretary of Defense
United States Department of Justice
1000 Defense Pentagon
Washington, D.C. 20301-1000

Army Brig. Gen. J. Hood
Commander, Joint Task Force-GTMO
Guantánamo Bay Naval Station
Guantánamo Bay, Cuba
c/o United States Army
Army Pentagon
Washington, D.C. 20310-0200

Army Col. Nelson J. Cannon
Commander, Camp Delta
Guantánamo Bay Naval Station
Guantánamo Bay, Cuba
c/o United States Army
Army Pentagon
Washington, D.C. 20310-0200

*Richard L. Cys*
Richard L. Cys