IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HUSSEIN SALEM MOHAMMAD ABDALLAH EL-MARQODI, | ) ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil Action No. 05-CV-1649 (RBW) |
| GEORGE W. BUSH, President of the United States, *et al.*, | ) ) ) ) ) | |
| Respondents. | ) ) | |

### RESPONDENTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO STAY PROCEEDINGS PENDING RELATED APPEALS

Respondents hereby submit this reply memorandum in support of their motion to stay proceedings pending related appeals in the above-captioned case.[1]

### ARGUMENT

**I.    Factual Returns Should Not Be Required**

While petitioner concedes that a stay is appropriate in this case, Petitioner's Conditional Consent to Respondents' Motion to Stay Proceedings and Reply to Respondents' Opposition to Motion for Writ of Habeas Corpus or Order to Show Cause at 1 ("Pet's Mem."), petitioner still insists that a factual return be filed in this case and that respondents file it within 60 days of

---

[1] As an initial matter the petitioner in the instant case has also filed a petition in Almerfedi v. Bush, No. 05-CV-1645 (PLF).  See El-Marqodi v. Bush, No. 05-CV-1649 (RBW), Notice of Multiple Petitions Filed By Guantanamo Bay Detainee (Sept. 14, 2005) (dkt. no. 13). Thus, an issue exists whether the issues raised in this series of briefs, inter alia, whether the proceedings should be stayed and whether advanced notice should be required before removing petitioner from Guantanamo Bay, should be addressed by Judge Friedman in Almerfedi, No. 05-CV-1645, the earlier filed case.

petitioner's September 12, 2005 memorandum. Id. at 2-4. Petitioner's cavalier and dismissive treatment of the needless expenditure of judicial and litigation resources that would result from submission of petitioner's factual return, ignores the cascade effect that would follow from not staying the case. Presently, there are more than 150 habeas cases pending on behalf of well over 250 detainees at Guantanamo Bay; the majority of those cases and petitioners were not subject to the decisions of Judges Leon and Green in Khalid, et al. and In re Guantanamo Detainee Cases. A decision to allow submission of a factual return to go forward pending the resolution of the appeals, which were argued before the D.C. Circuit on September 8, 2005, could precipitate a chain reaction – the scores of petitioners in other pending and future Guantanamo Bay detainee habeas cases, seeking parity of treatment, would request the Court to allow access to factual returns in those cases, perhaps even by lifting or modifying stays that have already been entered. Further, submission of the return in the instant case, compounded with the requirement of factual returns in a number of other cases, will increase the risks of inadvertent or other disclosure or compromise of classified information.

    This scenario is exactly what Judge Green aimed to avoid when she denied petitioners' motion to reconsider her order granting a stay pending appeal "in light of the substantial resources that would be expended and the significant burdens that would be incurred should this litigation go forward." See Order Denying Motion for Reconsideration of Order Granting Stay Pending Appeal in In re Guantanamo Detainee Cases (Feb. 7, 2005) (Green, J.). Indeed, the decision to allow a filing of a factual return would likely need to be revisited or relitigated, and may be shown to have been altogether unnecessary, once the Court of Appeals provides guidance regarding handling of the habeas claims of Guantanamo Bay detainees such as

petitioner.  Thus, in the interest of efficiency of judicial and litigation resources, as well as to minimize administrative burdens, this Court should hold proceedings in this case, including the filing of a factual return, in abeyance pending the outcome of the recently argued appeals of the decisions by Judges of this Court in the other Guantanamo Bay detainee cases.

In the event the Court orders the submission of a factual return, however, it could only be done pursuant to a coordinated and reasonable schedule, taking account of the fact that petitioners in all the recently filed cases have sought and are seeking factual returns and given the heavy logistical burdens posed by an undertaking to produce returns in the cases.[2] Petitioner's request that a factual return be filed in 60 days would result in an unnecessary logistical burden for respondents.[3]  See Pet's Mem. at 4.  Each factual return must be obtained from the Department of Defense ("DoD"), and then reviewed by agencies who provided source information to DoD to ensure that information disclosed to counsel in the return is in accordance with all applicable statutes, regulations, and Executive Orders.  Respondents must then prepare both public and classified versions of the factual return for submission to the Court and counsel.

Given that the D.C. Circuit has heard oral argument in two similar detainee cases and will soon be considering the proper scope of these proceedings, including whether the claims of

---

[2] Petitioner incorrectly states in his brief that respondents "were able to produce the classified versions of approximately 60 returns in little more than a week when Judge Green ordered them to do so in the cases under her supervision."  Pet's Mem. at 3.  The factual returns ordered by Judge Green were actually produced by respondents in several batches in a laborious, time-consuming process that took months to properly complete.

[3] Petitioner initially requested a factual return in 90 days, but has now changed his request to 60 days.  Pet's Mem. at 4.  Petitioner offers only a cursory explanation for this change, cryptically stating that "recent developments at Guantanamo prompt us to request a shorter time."  Id.

petitioners can be dismissed without reference to specific factual returns for petitioners, there is no justification for inflicting substantial burdens on government resources and increasing the danger to national security by providing petitioner's counsel access to factual returns that may ultimately prove unnecessary. Additionally, petitioner's counsel's representation that they will likely receive security clearances in the next 60 days, Pet's Mem. at 4, is questionable given that they also represent that they only "are in the process" of submitting their applications, id., and given the multi-week time frames associated with processing completed applications.

While the submission of a factual return should not go forward at all, if this Court allows such an undertaking to proceed, this Court should set a schedule that would be no more restrictive than necessary; for example, a schedule for the rolling production of factual returns in these (and potentially other) cases over anything less than the next 10 to 12 weeks would be burdensome. Therefore, respondents request that this Court give respondents 120 days to produce a factual return in this case, the same amount of time this Court gave respondents in Battayav v. Bush. See Battayav, No. 05-CV-714 (RBW), Order (May 19, 2005) (dkt. no. 12).[4]

For these reasons, the Court should not order the production of a factual return for petitioner in this case, and in no event should it require a return to be produced in 60 days.

---

[4] While petitioner's proposed factual return period on its face is half of the 120 day period this Court granted in Battayav, a close reading of petitioner's memorandum shows that petitioner has artfully crafted an even shorter period. While this Court in Battayav ordered production of factual returns "within 120 days of the entry of this Order," Battayav, No. 05-CV-714 (RBW), Order at 6, petitioner's proposed start date would be September 12, 2005, the day petitioner filed his memorandum, with a factual return due on November 10, 2005, Pet's Mem. at 5, making petitioner's request all the more unreasonable.

**II.     A Stay Should Not Be Conditioned On Advance Notice of Any Transfer.**

Petitioner also requests that, if a stay is entered in this case, the Court condition the stay on the imposition of preliminary injunctive relief requiring 30 days' advance notice of any removal of petitioner from Guantanamo Bay.  Pet's Mem. at 5.  Petitioner previously filed a motion for a temporary restraining order and preliminary injunction seeking such relief, and respondents opposed it.  See dkt. nos. 4, 7.  The Court should reject petitioner's request for injunctive relief for the reasons stated in respondents' opposition to petitioner's TRO/PI motion, just as this Court rejected a request for such relief in Almurbati v. Bush.[5]

As an initial matter, petitioner's operating assumption that a court entering a stay pending appeals in related cases may craft a stay that imposes a preliminary injunction without regard for whether a sufficient factual basis exists for such orders and without regard to the degree to which such orders would alter the status quo or impose mandatory duties upon a party, defies logic and Supreme Court and D.C. Circuit case law.  Preliminary injunctive relief "is an extraordinary and drastic remedy" that should not be available "unless the movant, by a clear showing, carries the burden of persuasion."  Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (emphasis in original).  Preliminary injunctive relief is not available except upon a showing by the movant that (1) the movant will suffer irreparable injury in the absence of an injunction; (2) the movant has a substantial likelihood of success on the merits with respect to the requested relief; (3) the

---

[5] Petitioner notes that, by its terms, Judge Urbina's August 19, 2005 temporary restraining order requiring 30 days notice by the government before transfer of petitioner from Guantanamo Bay remains in effect indefinitely.  Pet's Mem. at 4 (citing Order (dkt. no. 5)).  The Order, however, was entered without respondents being provided an opportunity to respond; therefore, there is a question whether the temporary restraining order may remain in effect for more than 10 days.  See Fed. R. Civ. P. 65(b).  Further, the Order, if in effect, should be reconsidered for the reasons argued infra.  See Fed. R. Civ. P. 54(b).

injunction would not substantially injure other interested parties; and (4) the injunction would further the public interest.  See Al-Fayed v. CIA, 254 F.3d 300, 303 (D.C. Cir. 2001). Petitioner's approach would circumvent these standards completely, and it thereby admits of no limiting principle.[6]  See Battayav, No. 05-CV-714 (RBW), Order at 5-6 (May 19, 2005) (dkt. no. 12).  The more appropriate way to proceed with respect to petitioner's request for preliminary injunctive relief would be for the Court to grant the stay, but permit petitioner to seek emergency injunctive relief where the facts and law truly warrant lifting the stay for the purpose of considering such relief.

Indeed, this Court in Almurbati v. Bush, No. 04-CV-1227 (RBW), 366 F. Supp. 2d 72, 82-83 (D.D.C. 2005), a case with very similar facts and issues, denied a similar motion for a preliminary injunction.[7]  This Court, after noting that courts have traditionally shown the "utmost deference to Presidential responsibilities," id. (citing Dep't of Navy v. Egan, 484 U.S. 518, 529-30 (1988) (quoting United States v. Nixon, 418 U.S. 683, 710 (1974))), carefully considered four factors in determining whether to grant petitioners' preliminary injunction motion.  This Court

---

[6] See Al-Anazi, No. 05-CV-345 (JDB), Memorandum Opinion (Apr. 21, 2005) at 19 n.11 (dkt. no. 22) ("if petitioners cannot meet the prerequisites of a motion for preliminary injunction [requiring advance notice of transfer] (as the Court concludes), it is unlikely they should receive that same relief through the backdoor of a stay").

[7] While petitioner cites to this decision in his memorandum in support of his proposition that "this Court has previously imposed restrictions on Respondents moving detainees," Pet's Mem. at 5, he inexplicably fails to mention that this Court held in Almurbati that advance notice was not appropriate.  366 F. Supp. 2d at 81-82.  Instead, this Court ordered that "upon the transfer or repatriation of any petitioner, the respondents shall submit a declaration to this Court certifying that any transfers or repatriations were not made for the purpose of merely continuing the petitioners' detention on behalf of the United States or for the purpose of extinguishing this Court of jurisdiction over the petitioners' actions for habeas relief for a reason unrelated to the decision that the petitioners' detention is no longer warranted by the United States."  Id. at 82-83.

was "compelled to conclude that the petitioners have failed to establish that they will be irreparably harmed if and when the respondents decide to transfer them from United States custody." 366 F. Supp. 2d at 79.[8] Further, this Court held that it "simply does not have authority" to require the Executive Branch to provide thirty day advance notices prior to transfer of petitioners, and accordingly, "petitioners have failed to satisfy the likelihood of success prong of the preliminary injunction standard." 366 F. Supp. 2d at 81.

This Court also determined, after weighing whether an injunction would substantially injure other interested parties, that the "weighty and sensitive governmental interests," 366 F. Supp. 2d at 82 (citation omitted), including, inter alia, the need for the government to speak with one voice with foreign governments and the detrimental effects an injunction might have on the United States' ability to fight the war on terrorism, tilted the scale of the third prong of the preliminary injunction standard "in favor of the respondents." Id. Finally, this Court, in evaluating whether granting the injunction implicated the public interest, held that it is "abundantly clear" that respondents have no intention of transferring petitioners to countries that might torture them, or to have them further detained on the United States' behalf. 366 F. Supp. 2d at 82 (emphasis added).

Moreover, this Court in denying petitioners' motion for a preliminary injunction stated that to "conclude otherwise, would amount to an unconstitutional infringement on the Executive Branch's authority to assess the propriety of when designated enemy combatants in the United States' ongoing battle against terrorism should be released." 366 F. Supp. 2d at 82. This

---

[8] This Court further insightfully noted that it "is clear that the underlying basis for the claims advanced by petitioners is their basic distrust of the Executive Branch. And, the predicate for their distrust is based on nothing more than speculation, innuendo and second hand media reports." 366 F. Supp. 2d at 78.

conclusion, this Court explained, "is compelled because on the record before the Court, the separation of powers doctrine precludes the Court from granting the relief requested by the petitioners." Id. Nearly identical facts and legal issues are presented to the Court in the instant case and the Court should again reach the result it reached in Almurbati.

Additionally, this Court denied petitioner's motion for preliminary injunction requiring respondents to provide 30 days' notice of intent to remove petitioner from Guantanamo Bay in Battayav. Battayav, 05-CV-714 (RBW), Order (May 3, 2005) (dkt. no. 9) (citing reasons previously articulated in Almurbati, No. 04-CV-1227 (RBW), 366 F. Supp. 2d 72).

Further, Judges in other Guantanamo detainee cases have followed such an approach. See Al-Anazi v. Bush, 370 F. Supp. 2d 188 (D.D.C. 2005) (denying preliminary injunction); Mammar v. Bush, No. 05-CV-573 (RJL), Memorandum Opinion (May 2, 2005) (dkt. no. 7) (same); Attash v. Bush, No. 05-CV-1592 (RCL), Order (Sept. 1, 2005) (dkt. 12) (same).

For these reasons, as well as those stated in respondents' opposition to petitioner's TRO/PI motion, the Court should not condition a stay on any advance notice of transfer.

## CONCLUSION

For the foregoing reasons, respondents' motion to stay should be granted, without condition or limitation.

Dated: September 22, 2005

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

DOUGLAS N. LETTER
Terrorism Litigation Counsel

   /s/ Nicholas J. Patterson
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ
PREEYA M. NORONHA
ROBERT J. KATERBERG
NICHOLAS J. PATTERSON
ANDREW I. WARDEN
EDWARD H. WHITE
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.  Room 7144
Washington, DC  20530
Tel:  (202) 514-4523
Fax:  (202) 616-8470

Attorneys for Respondents